IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01200-CMA-KLM

SHO SERVICES, LLC, a Colorado limited liability company,

Plaintiff,

v.

CHINA FILM GROUP CORPORATION, a China corporation,

Defendant.

---

**ORDER ENTERING DEFAULT JUDGMENT AGAINST
DEFENDANT CHINA FILM GROUP CORPORATION**

---

This matter is before the Court on Plaintiff Sho Services, LLC's Motion for Default Judgment against Defendant China Film Group Corporation. (Doc. # 16.) For the reasons discussed below, the motion is granted and a default judgment is entered.

## I. BACKGROUND

Plaintiff is a Colorado-based security, crowd safety, and management company that provides safety consulting and management designed for live entertainment environments, including evacuation plans, emergency procedure plans, public safety coordination, and budgeting compliance. (*Id.* at ¶ 7.) Defendant is a film enterprise in the People's Republic of China. (*Id.* at ¶ 2.)

In early 2017, Defendant was seeking security, security coordination, and executive protection in several locations in Asia for the production of a new, feature-length theatrical motion picture, known as Edge of the World. (*Id.* at ¶ 8.) In connection

with this search, Defendant sent emails to Plaintiff regarding the services it needed, and in response, Plaintiff provided security personnel profiles to Defendant. (*Id.*)

Defendant eventually asked Plaintiff to book airfare for several of Plaintiff's security personnel to fly to Asia. (*Id.*) As a result, the Parties entered into a payment contract, referred to as a Reimbursement Memorandum. (*Id.* at ¶ 9.) Over the next two months, Defendant made numerous additional requests to Plaintiff for security personnel to assist in the filming and production of Edge of the World in Asia. Each time Plaintiff provided such personnel, the Parties entered into another Reimbursement Memorandum. (*Id.* at ¶¶ 10–11.) Via email, Defendant also agreed to pay for additional expenses connected to Plaintiff's services, travels, and appearances at various meetings in China. (Doc. # 25.)

Consistent with its services, the executed Memoranda, and various other email exchanges, Plaintiff issued a series of invoices from its location in Colorado via email to Defendant. For example, Plaintiff issued invoices to Defendant on February 25, 2017 (two), February 26, 2017 (four), March 5, 2017 (two), March 11, 2017, March 19, 2017 (three), March 27, 2017, March 31, 2017, April 5, 2017, and April 15, 2017. (*Id.* at ¶ 12; Doc. # 21-2.) Despite repeated requests for payment, Defendant has not paid any of these invoices and, according to Plaintiff, Defendant now owes Plaintiff the principal amount of $241,923.91 for services provided and costs incurred. (*Id.* at ¶¶ 12–13.)

To recover this outstanding debt, Plaintiff commenced this action, asserting two claims for relief: Breach of Contract and Unjust Enrichment. (Doc. # 1.) Plaintiff effectuated service on November 13, 2017. (Doc. # 14.) When Defendant did not

respond to the Complaint or otherwise enter an appearance, Plaintiff moved for an Entry of Default, which the Clerk granted on February 13, 2018 (Doc. # 18), and a Default Judgment, which is the subject of the instant order.

## II. PERSONAL JURISDICTION

### A. LAW

Before entering default judgment against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction over the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986); *see also Hukill v. Okla. Native Am. Domestic Violence Coalition,* 542 F.3d 794, 797 (10th Cir. 2008) ("[A] default judgment in a civil case is void if there is no personal jurisdiction over the defendant."). Defects in personal jurisdiction are not waived by default when a party fails to appear or to respond, and the plaintiff bears the burden of proving personal jurisdiction before a default judgment may be entered. *Williams*, 802 F.2d at 1202–03. "Where, as here, the issue is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *Sharpshooter Spectrum Venture, LLC v. Consentino,* No. 09–cv–0150–WDM–KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011)).

To establish personal jurisdiction in a diversity case, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Colorado's long-arm statute permits the Court to exercise personal jurisdiction to

3

the full extent of the Due Process Clause so the analysis collapses into a single due process inquiry. *See* Colo. Rev. Stat. § 13–1–124(1)(a)–(b); *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F.Supp. 541, 543 (D. Colo. 1995) (citing *Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456 (1968)); *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1197–98 (D. Colo. 2002).

"The Due Process Clause protects a [defendant's] liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945)). To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have "certain minimum contacts [with the jurisdiction] . . . ." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

This minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). The court's duty is the same in either case: guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation omitted).

As pertinent there, specific jurisdiction exists if a three part inquiry is satisfied: "(1) the defendant purposefully avails itself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action arises from the consequences of the defendant's in-state activity; and (3) defendant's activities, or the

consequences thereof, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Van Schaack & Co. v. Dist. Court, Eighteenth Judicial Dist.*, 189 Colo. 145, 147 (1975); *Plus Sys., Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 117–18 (D. Colo. 1992).

## B. ANALYSIS

Plaintiff has sufficiently demonstrated that Defendant is subject to specific jurisdiction in Colorado. First, Defendant has purposefully availed itself of the state's laws. In evaluating purposeful availment, the Court considers the quality and nature of the contacts with Colorado. *Von Palffy–Erdoed v. Bugescu*, 708 P.2d 816, 818 (Colo. App. 1985); *Plus Sys., Inc.*, 804 F. Supp. at 118. Physical presence is not required, and a single act may be enough. *Scheuer v. Dist.Court*, 684 P.2d 249, 251 (Colo. 1984). The following well-pleaded facts, among others, are sufficient to support purposeful availment in this case:

- Defendant solicited Plaintiff at its offices in Colorado by email;
- Defendant thereafter sent several emails to Plaintiff at its place of business in Colorado concerning the services it required and negotiating the terms of their arrangement;

- Defendant and Plaintiff entered into numerous Reimbursement Memoranda, which were signed by Plaintiff in Colorado[1];
- the Reimbursement Memoranda all provided that Defendant would reimburse Plaintiff, via "bank/wire transfer" to Plaintiff's bank account in Colorado for the cost of its Colorado-based representatives' travel to, and services in, Asia;
- Plaintiff sent numerous invoices from its Colorado location to Defendant requesting that the funds owed be wired to Plaintiff's bank account in Colorado;
- Defendant responded by promising to wire funds, or stating that it had attempted to wire funds, to Plaintiff's bank in Colorado; and
- Defendant sent a representative to Colorado to meet with Plaintiff to discuss the outstanding debt.

(Doc. ## 1 at ¶ 14; 23 at 1–6; 23-1; 23-2; 23-3; 23-4; 23-5.) These contacts are sufficient to support that Defendant purposefully availed itself of the forum state. *See Plus System, Inc.*, 804 F.Supp. at 118–19 (finding that a court may determine that a defendant purposely avails itself when, among other things, it communicates via computer with a plaintiff in Colorado, executes a contract with the plaintiff, who signs in Colorado; makes payments to Colorado; and sends a representative to Colorado for the

---

[1] The Court recognizes that "the mere existence of a contract executed by a Colorado plaintiff is insufficient to confer long-arm jurisdiction." *Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.*, 323 F.Supp. 996 (D.Colo.), aff'd, 449 F.2d 775 (10th Cir.1971). However, the negotiation or execution of this contract may lend support to a Court's exercise of specific jurisdiction over a non-resident defendant, particularly when combined with examples of defendant's continued communications with a Colorado plaintiff, a defendant's business-related visits to Colorado, and/or a defendant's remitting of payments to a Colorado bank account for a Colorado plaintiff— all of which are present in this case. See e.g., *Plus Sys., Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 118 (D. Colo. 1992).

specific business relationship at issue in the lawsuit); *N-Zymeceuticals, Inc. v. Kriz*, No. Civ.A. 05-CV-01003-EWN, 2005 WL 1994253, at *4-5 (Aug. 16, 2005) (concluding that one who systematically places interstate telephone orders for goods, procures shipment of those goods from another state, and fails to pay for the goods has caused important consequences to the seller in the other state "and may reasonably expect to be haled into court in the seller's state.").

Second, the Court also finds that Plaintiff's claim for relief clearly arises from the consequences in Colorado of Defendant's activities. Defendant induced the services of a Colorado corporation, entered into contracts with that corporation, and breached those contracts by failing to render the promised payments to Plaintiff's Colorado bank account. In other words, Defendant's breach of contract, i.e. its failure to pay, caused and is causing economic loss in Colorado. Such economic ramifications support a finding that Plaintiff's cause of action emanates from Defendant's conduct aimed at Colorado. *See Marquest Med. Prods., Inc. v. Daniel, McKee & Co.*, 791 P.2d 14, 16 (Colo. App.1990) (consequences of defendant's allegedly false representations resulted in substantial economic losses in Colorado).

Third, the Court finds that the Defendant's contacts have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. Defendant received its services from Colorado, agreed to (and allegedly attempted to) make payments in Colorado, and even traveled to Colorado to discuss those payments. All of Defendant's communications with Plaintiff were directed to Plaintiff in Colorado, and Defendant's actions have caused financial harm in Colorado. Ultimately, the

consequences of the dispute between Plaintiff and Defendant have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. *See McGee v. Int'l Life Ins. Co*, 355 U.S. 220, 223 (1957). The connection is not so isolated or attenuated that the establishment of jurisdiction would be unjust. *See World–Wide Volkswagen Corp.*, 444 U.S. at 299.

Pursuant to the foregoing analysis, the Court finds that it has personal jurisdiction over the Defendant and may proceed to address the merits of Plaintiff's motion.

### III. <u>FAILURE TO DEFEND</u>

**A. LAW**

Default judgment may be entered against a party who fails to appear or otherwise defend. Fed. R. Civ. P. 55. In order to obtain a judgment by default, the moving party must follow the two-step process described in Rule 55: "first, he or she must seek an entry of default from the Clerk of the Court under Rule 55(a); second, after default has been entered by the Clerk, the party must seek default judgment according to the strictures of Rule 55(b)." *Richfield Hospitality, Inc. v. Shubh Hotels Detroit, LLC*, No. 10-cv-00526-PAB-MJW, 2011 WL 3799031, at *2 (D. Colo. Aug. 26, 2011).

At step two, the decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quoting *Dennis Garberg & Assocs. V. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997)). Nonetheless, "there must be a sufficient basis in the pleadings" for default judgment to be entered. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).

A defendant who fails to answer, plead, or otherwise defend an action is deemed to have admitted the well-pleaded factual allegations of the complaint as true. *See*, *e.g.*, *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (stating that upon default, the defendant admits the plaintiff's allegations); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1956) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded."). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06–cv–01684–EWN–CBS, 2007 WL 437762, at *3 (D.Colo. Feb. 6, 2007) (unpublished).

Ultimately, default judgment is available "when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991).

**B. ANALYSIS**

This Court has no trouble concluding that Defendant has failed to appear or otherwise defend in this action. Despite having been served, Defendant has not answered the Complaint, responded to the instant motion, or even entered an appearance in this lawsuit. The Clerk properly entered default on February 13, 2018 (Doc. # 18), and it is now clear that the adversary process has been halted by Defendant's silence.

The Court also finds, based on the well-pleaded facts in the Complaint and the substantial documentary evidence submitted by Plaintiff, that there is a "sufficient basis in the pleadings for default to be entered." *Bixler*, 596 F.3d at 762 (10th Cir. 2010). Indeed, the Parties' executed Reimbursement Memoranda and email exchanges are clear: Defendant had promised, and was obligated, to reimburse Plaintiff for the specified amounts in exchange for Plaintiff's services in Asia. Plaintiff rendered those services, but Defendant did not pay. Based on Plaintiff's well-pleaded allegations and supporting exhibits, it appears that Defendant breached the Parties' agreements and was unjustly enriched in the process. Thus, there is a sufficient basis for default to be entered.

## IV. **DAMAGES**

### A. LAW

Default judgment, however, cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). One of the main reasons for this requirement is to prevent plaintiffs who obtain default judgments from receiving more in damages than is supported by actual proof. *Id.* at n.2. Rule 55(b) provides that "the court may conduct such hearings or order such references as it deems necessary" in order to "determine the amount of damages." A court may enter a default judgment without a hearing when, as is the case here, the amount claimed is a liquidated sum or one capable of mathematical calculation. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) ("Damages may be awarded only if the

record adequately reflects the basis for award via . . . a demonstration by detailed affidavits establishing the necessary facts.").

## B. ANALYSIS

The damages in this case are capable of mathematical calculation. Plaintiff simply requests an award of the total funds owed under the Parties' Reimbursement Memoranda and other written agreements related to its services. (Doc. ## 21, 25.) All of the Memoranda and unpaid invoices are before the Court. They reflect the following outstanding debts:

| Date | Invoice No. | Memorandum Reference No. | Total due |
|---|---|---|---|
| 15-Apr-17 | 04152017001 | SS519D | $29,400.00 |
| 31-Mar-17 | 03312017001 | SS095GA | $23,092.76 |
| 27-Mar-17 | 03272017001 | RDJ115L | $35,269.64 |
| 19-Mar-17 | 03192017001 | RDJ509P | $17,890.98 |
| 11-Mar-17 | 03112017001 | SS156FINAL & SS156FINALEXTEND | $31,138.20 |
| 5-Mar-17 & 26-Feb-17 | 03052017002 & 02262017004 | SC502D | $15,701.71 |
| 5-Mar-17 & 26-Feb-17 | 03052017001 & 02262017003 | DJ502Z & DJ502FINALEXTEND & DJ502FINALEXTENDADJUST | $42,013.33 |
| 26-Feb-17 | 02262017002 | NB105LFINAL EXTENSION | $4,058.58 |
| 26-Feb-17 | 02262017001 | NB105L | $12,933.65 |
| 25-Feb-17 | 02252017001 | SS156B | $15,274.61 |
| 5-Apr-17 | 04052017001 | None | $1,554.91 |
| 19-Mar-17 | 03192017003 & 03192017002 | None | $6,370.08 |
| 25-Feb-17 | 02252017002 | None | $7,225.46 |

|  |  | TOTAL: | $241,923.91[2] |
|---|---|---|---|

In sum, the Court finds that Plaintiff's damages total $241,923.91, as demonstrated by substantial supporting documentation, including the Parties' Reimbursement Memoranda, Plaintiff's unpaid invoices, and numerous emails supporting that Defendant agreed to pay these amounts.

## V. **CONCLUSION**

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment (Doc. # 16.) The Court FURTHER ORDERS that final judgment is hereby entered in favor of Plaintiff Sho Services, LLC and against Defendant China Film Group Corporation in the amount of $241,923.91, plus (1) prejudgment interest at a rate of 8% per annum, from April 15, 2017[3] to the date of this Judgment; and (2) post-judgment interest, which will

---

[2] With respect to Invoices 03312017001, 03192017001, and 03112017001 (as set forth below), the Court notes that the damages being requested exceed the corresponding Reimbursement Memorandum by $0.76, $90.83, and $2,738.20, respectively—totaling an award in excess of the Parties' contractual agreements by $2,829.79. With respect to Invoices 04052017001, 03192017003, 03192017002, and 02252017002, Plaintiff submits that those amounts are not tied to any Reimbursement Memorandum. Instead, they stem from written, emailed assurances from Defendant and reflect amounts incurred for Plaintiff's travels to Hong Kong and Beijing at Defendant's invitation and promises to pay. Because Plaintiff has submitted sufficient documentation to support these invoices and their relationship to services provided at Defendant's request, as well as to demonstrate that Defendant was unjustly enriched by these amounts, the Court awards them. *Applied Capital, Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1211 (D.N.M. 2007) (awarding $100,000.00 in damages on an unjust enrichment claim on a default judgment after a hearing); *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) (sum certain damages may be supported by evidence presented at a hearing or a demonstration by detailed documentary evidence or affidavits).

[3] The Reimbursement Memoranda do not establish an interest rate. Accordingly, Colorado's statutory default interest rate of 8% applies from the date Defendant wrongfully withheld payment from Plaintiff and continues through the date of judgment. Colo. Rev. Stat. § 5-12-101. Plaintiff requests that the interest on the total amount accrue from February 25, 2017 (the date of the first invoice), but that would result in interest accruing on debts not yet incurred. The Court instead orders that interest accrue from the date of the final invoice, April 15, 2017.

accrue at a rate of 8% per annum from the date of this Judgment until the Judgment is paid.

DATED: May 11, 2018                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge